Defendant-appellant Robert Garman appeals from his conviction and sentence for violating Section 73.01(A) of the General Ordinances of the City of Dayton, which requires that a motorist involved in an accident must stop and provide certain information, including his license plate number. Garman contends that his conviction is not supported by the evidence, and is against the manifest weight of the evidence. From our view of the record, we conclude that there is evidence in the record to support the conviction, and that it is not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.
 I
At about 5:15 p.m. in late October, 1997, Garman, who was driving a silver truck, collided with a van being driven by Teresa Sutton. Garman parked his truck in a parking lot down the street from where Sutton was sitting in her van, and, after a brief interval, walked over to Sutton. What happened thereafter was described by Sutton in her testimony as follows:
 Q. And what was the first thing the defendant said to you, as he stood at the window?
A. "I am going home."
Q. What was your response to that?
 A. "Sir, you are supposed to stay at the scene of an accident."
Q. And did he have any answer for that?
 A. "I am going home. My name is Robert Garman. I live in Springmont. If you want me, I am there." I said, "You are supposed to leave all of your information." He opened his wallet. I was trying to copy it down. I brought what I copied it on. I felt he was rather belligerent with me. I was also upset, at the time. I asked him why he was yelling at me. He turned and walked off.
* * *
 Q. When he pulled out his wallet and opened it, what could you see?
 A. I could see his driver's license. I wrote the information down.
 Q. When he opened it up, did he hold it out to you and say, "Here, copy this"?
 A. I had my window down a portion of the way. He had opened it like that. He was down like this, talking at me. I felt he was rather over-assertive. I was sitting there, trying to copy the information down.
 I was telling him things, at the same time. "I have Allstate Insurance. You are supposed to stay at the scene of an accident." I was upset. I was doing the, "Oh, my gosh," and that sort of thing.
 Q. Did he ask you to give him any return information on your identity?
A. No, ma'am.
Q. Were you able to copy his information?
 A. He went across the street. It was then that things were clicking in my head. I thought I don't know what he is doing. I don't have his car license. So I went across the street. I checked for traffic. I went across the lanes and pulled in behind him, when he was taking off.
 Q. Were you able to copy down his license on his truck?
A. Yes, ma'am.
 Q. At any time, did Mr. Garman tell you the name of his insurance company or show you the card?
A. No, ma'am.
Garman was arrested and charged with violating Section 73.01 (A) of the Dayton Revised Code of General Ordinances, which provides as follows:
 In case of accident to or collision with persons or property on any of the highways, park roads, airport roads, or bikeways of the city, due to the driving or operation thereon of such vehicle or trackless trolley, the person so driving or operating such vehicle or trackless trolley having knowledge of such accident or collision, shall immediately stop his vehicle or trackless trolley at the scene of the accident or collision and shall remain at the scene of the accident or collision until he has given his name and address, and, if he is not the owner, the name and address of the owner of such vehicle or trackless trolley, together with the registered number of such vehicle or trackless trolley, to any person injured in such accident or collision or to the operator, occupant, owner, or attendant of any vehicle or trackless trolley damaged in such accident or collision, or to any police officer or a special policeman, at the scene of such accident or collision.
Garman was also charged with failing to comply with Section 71.46 of the Dayton Revised Code of General Ordinances, concerning his failure to yield or stop while entering a roadway or crossing sidewalk. Following a bench trial, Garman was found guilty of both charges, was sentenced to 180 days incarceration, suspended, fined $100, suspended, ordered to pay court costs, and was ordered to make restitution to Sutton. Garman appeals from his conviction and sentence for violating Section 73.01(A) of the Revised Code of General Ordinances.
 II
Garman has asserted two assignments of errors, as follows:
 1. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN OVERRULING APPELLANT'S OHIO RULE 29 MOTION FOR ACQUITTAL WHERE APPELLEE FAILED TO SHOW THAT APPELLANT DID NOT COMPLY WITH THE DUTIES SET FORTH IN THE REVISED CODE OF GENERAL ORDINANCES OF THE CITY OF DAYTON, OHIO ("DAYTON R.C.G.O.") SECTION 73.01(A).
 2. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN FINDING HIM "GUILTY" WHERE NO MANIFEST WEIGHT OF THE EVIDENCE EXISTED TO SUPPORT SUCH A FINDING.
Although Garman's First Assignment of Error tests the sufficiency of the evidence presented by the State, while his Second Assignment of Error asserts that his conviction, following the presentation of evidence by both parties, is against the manifest weight of the evidence, the difference between the two assignments of error is immaterial in view of our analysis.
Section 73.01(A) requires that a motorist involved in a collision stop and provide certain information, including the "registered number" of his vehicle. Both parties assume that the "registered number" of his vehicle is, in modern parlance, the license plate number, and we agree.
Garman admits that he did not provide his license plate number before leaving the scene, but argues that his failure to do so was immaterial, in view of the fact that Sutton was able to obtain this number from his license plate as he was leaving the scene. In our view, the fact that the license plate number of a motorist involved in an accident is ascertained from other sources does not satisfy the motorist's obligation to give that number before leaving the scene. A contrary conclusion would eviscerate the requirement. Any time that the driver of a vehicle involved in a collision can be ascertained, a necessary predicate to the driver's prosecution, it will almost always be the case that the driver's license plate number can subsequently be obtained from computer records maintained by Ohio or one of its sister states. The terms of the ordinance expressly require that the driver involved in a collision give his license plate number, and, in our view this requires some affirmative act on his part. We note, however, that our conclusion would be otherwise if, before leaving the scene, the driver is made aware that the other driver, or a police officer, has already recorded his license plate number.
Because we conclude that Garman's failure to give his license plate number before leaving the scene is sufficient to make out a violation of the ordinance, and because his failure to give it was established during the State's case, and was never disputed by Garman, it necessarily follows that the trial court properly overruled his motion for judgment of acquittal, at the close of the State's evidence, and properly found Garman guilty of violating the ordinance, based upon the evidence in this record.
Both of Garman's assignments of error are overruled.
 III
Both of Garman's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and WOLFF, JJ., concur.
Copies mailed to:
Mary E. Welsh Steven M. Herron Hon. Bill C. Littlejohn